UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAID ASKAROV,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, warden of Otay Mesa Detention Center DANIEL A. BRIGHTMAN, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); PAMELA BONDI, Attorney General of the United States, U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                                    Respondents. | Case No.: 26-cv-1806-JES-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Said Askarov's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on March 22, 2026. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition. ECF No. 4

1

26-cv-1806-JES-DDL

("Return"). Petitioner filed an optional Traverse. ECF No. 5 ("Traverse"). For the reasons set forth below, the Court **GRANTS** the petition.

## I.    BACKGROUND

Petitioner, a citizen of Kyrgyzstan, entered the United States on March 9, 2023, fleeing persecution and discrimination in his home county. Pet. ¶¶ 1, 2. He was granted humanitarian parole the same day. *Id.* ¶ 2. Petitioner since received work authorization, found housing, and has integrated himself into the local community. *Id.* ¶ 3. In 2024, Petitioner filed an application for asylum. *Id.* Petitioner states that he has met all conditions of his parole. *Id.* ¶ 42.

Petitioner was re-detained on February 19, 2026, while driving for Uber. *Id.* ¶ 4. He picked up an Uber client at Los Angeles International Airport and drove him to Camp Pendleton Marine Base. *Id.* The guard at the entry gate asked for identification, asked if Petitioner had a green card, and then ordered him to pull to the side and wait. *Id.* After about two hours, military police ordered Petitioner out of his car and handcuffed him without warrant or explanation. *Id.* The military police officers then delivered Petitioner to Immigration and Customs Enforcement ("ICE") officers, who drove Petitioner to Otay Mesa Detention Center where he is currently still detained. *Id.*

Petitioner states that he was never given notice that his parole was being termination, a particularized reason for his re-detention, or any opportunity to be heard. *Id.* ¶¶ 46, 47.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.    DISCUSSION

In his petition, Petitioner argues that his re-detention violated the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment because Respondents revoked his release on supervision on the basis of his 2003 conviction, which predated his release, without providing any process regarding his re-detention. Pet. ¶ 44. Respondents argue only that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but correctly concede that courts have consistently held otherwise. *See generally,* Return. The Court does not find that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) for the reasons set forth in *Martinez Lopez v. LaRose*, No. 25- cv-2717-JES-AHG, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025). The Court analyzes Petitioner's Due Process claim below.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of release. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16,

26-cv-1806-JES-DDL

2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)"); *Castellon*, 2025 WL 2373425, at *4; *Faizyan v. Casey*, No. 3:25-CV-0884-RBM-JLB, 2025 WL 3208844, at *1 n.2 (S.D. Cal. Nov. 17, 2025).

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither.

26-cv-1806-JES-DDL

> [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2025). Several district courts have followed suit and found due process violations where the petitioners in the cases were specifically identified to be released under Order of Release on Recognizance with an accompanying I-220 form. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where petitioner was originally released on OREC); *Leiva Flores*, 2025 WL 3228306, at *5 (similarly finding procedural due process violation for petitioner released on OREC and requiring hearing before detention); *Faizyan*, 2025 WL 3208844, at *7 (same).

The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they issued his parole. *See* Pet. ¶ 39. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that he has not been provided any notice or opportunity to be heard regarding the revocation of his parole. Pet. ¶¶ 46, 47. In their briefing, Respondents provide no evidence that Petitioner was afforded any notice or opportunity to be heard regarding the revocation of his parole. *See generally* ECF No. 4. Further, without changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary,

but not unlimited, basis."). Petitioner alleges, and Respondents do not contest, that there were no changed circumstances or individualized findings in Petitioner's case justifying his re-detention. *Id.* ¶ 6. The manner in which Petitioner was re-detained reflects this, because Petitioner was taken to immigration detention after driving an Uber passenger from the airport to Camp Pendleton and being asked about his legal status by a guard. *Id.* ¶ 45. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him on February 19, 2026.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and does not reach the remainder of Petitioner's claims as the requested relief is granted. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's supervised release violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **March 31, 2026**, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: March 30, 2026

Honorable James E. Simmons Jr.
United States District Judge

26-cv-1806-JES-DDL